IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** * | |
| * | |
| vs.   * | Case No. 21-cr-00393 (RDM) |
| * | |
| **HUNTER PALM** * | |
| **Defendant** * | |
| * | |

ooOoo

### DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

Hunter Palm, by his undersigned counsel, hereby respectfully requests that the Court impose a sentence of probation at his upcoming sentencing in connection with his conduct at the United States Capitol on January 6. A sentence of probation is warranted because Mr. Palm pleaded guilty to a misdemeanor, 18 U.S.C. § 1752(a)(2) and has accepted responsibility. Under the properly calculated guideline range, probation is the appropriate sentence. Probation also avoids unwarranted disparity, and accounts for the many mitigating circumstances present in the case, which include:

- Mr. Palm's youth at the time of the offense – he was just 18 years old;

- he was not violent and did not destroy property at any time on January 6;

- he encouraged other persons in the Capitol *not* to cause damage;

- he did not wear any tactical gear or carry weapons on January 6 because he came to attend a political rally, with no preconceived intent to enter the Capitol;

- he has no criminal history or law enforcement contacts before or since January 6;

- he has a history of contributions to his community;

- he has a steady work history; and

- he is contrite, repentant and remorseful for his conduct.

Mr. Palm does not dispute the Guidelines calculation set out in the Presentence Report, which results in an advisory guideline range of 0 to 6 months. Presentence Report ("PSR") at ¶ 87. The total offense level is 6. PSR at ¶¶ 35-44. His criminal history category is I. PSR at ¶¶ 46-53. This range is within Zone A, which provides that "a sentence of imprisonment is not required." U.S.S.G. § 5C1.1(b). There are no grounds for the Court to vary upward from the sentencing range, to select a sentence above the low end of the range, or for the Court to ignore the Guidelines commentary, which provides that for a zero-criminal history point offender, such as Mr. Palm a "sentence other than a sentence of imprisonment . . . is generally appropriate." U.S.S.G. § 5C1.1, comment (n.10).

In sum, a sentence of probation for this young man is "sufficient, but not greater than necessary" as mandated by Congress in 18 U.S.C. § 3553(a). Non-incarceration also renders just punishment and comports with all the other purposes of sentencing set out in § 3553(a).

**I.      Nature and Circumstances of the Offense Do Not Warrant Imprisonment**

While Hunter Palm entered the Capitol on January 6, shouted slogans, and entered an office, the most salient aspects of his conduct, as the government concedes, is that he

> is young, and he was not violent inside the Capitol, nor did he destroy any property. In fact, he encouraged other rioters *not* to damage the Capitol. And he has at least tried to right the wrong. He voluntarily interviewed with the FBI in February 2021 before he was charged and admitted to some of his actions (but not others).

Gov. Sent'g Memo (ECF 49) at 1 (emphasis original).

Not much more needs to be said.

Nonetheless, it is also significant that Hunter Palm did not wear any protective gear such as a gas mask or protective vest (as others did on January 6) and did not bring any pepper spray or any

other weapons when he came to DC.  He came to DC to attend a political rally.  He did not come to take part in an insurrection or to impede the orderly process of government.  He came to DC because this had been the first time in his life that he had been able to cast a vote and he had never been to our nation's capital.  He came to exercise his First Amendment rights, with the purest intents to participate as an American citizen.  After listening to the speeches that morning, along with tens of thousands of other Americans, he marched toward the Capitol.

At some point, things got out of hand.  Fueled by the speeches of former President Trump, other politicians and prominent Americans such as Rudy Giuliani, who had once distinguished himself as "America's mayor" after 9/11, as the US Attorney for the Southern District of New York and as an Associate Attorney General, the march toward the Capitol by many became  emotionally charged.  As many marches do when like-minded people gather together, emotions rise.  On January 6, as thousands of people carrying American flags, at times singing the national anthem marched together, young Hunter Palm was swept up by the rising patriotic fervor.  As a young man, he lost track of his emotions.  He readily admits that he said and did some stupid and immature things that day.  But in the end, it is significant that despite the turmoil around him he never hurt anyone, or destroyed any property and encouraged others not to damage the Capitol.

After January 6, unlike a number of others, he did not celebrate on social media or ore elsewhere the worst conduct that took place on January 6.  The fact that he was less than forthcoming about his conduct when he spoke to his father, is not a crime and should not be taken into account by the Court in sentencing Hunter.  In fact, it denotes that Hunter was not proud of his conduct and he recognized that some of what he had done was not right.  That he minimized his actions when he spoke to the FBI is of the same nature.  It is part of human nature that it is difficult to own up to the

3

worst of our conduct. After all, it is because of the difficulty of fully acknowledging our misdeeds that we celebrate the myth of young George Washington bravely telling his father about the cherry tree that "I cannot tell a lie…I did cut it with my hatchet."

**II.     Hunter Palm's History and Characteristics Offer Mitigating Circumstances**

Despite his young age, Hunter is a young man who has a history of steady employment and has distinguished himself by making contributions to his community. *See* PSR at ¶¶ 71-75. He has worked at different jobs since he was 15 years old. With the money he earned from flipping houses with his father, he started a business "Journey's End Gamer's Fellowship" that provides a safe place for struggling kids to play role-playing games, table-top games, and trading cards. He also has participated in raising funds for those less fortunate.

He has absolutely no criminal history – not even a traffic citation. Several letters attached herewith from those who know him describe what a fine young man Hunter is.

What took place on January 6 is an aberration from his exemplary life. It is clear that Hunter's youth made him more susceptible to the influences of that day. And, as the Court is well aware, there are ample reasons and support in the law, scientific and sociological literature for affording leniency to young persons when they deviate from the right path. *See, e.g., Roper v. Simmons,* 543 U.S. 551 (2005).

> First, as any parent knows and as the scientific and sociological studies respondent and his *amici* cite tend to confirm, "[a] lack of maturity and an underdeveloped sense of responsibility are found in youth more often than in adults and are more understandable among the young. These qualities often result in impetuous and ill-considered actions and decisions." It has been noted that "adolescents are overrepresented statistically in virtually every category of reckless behavior." In recognition of the comparative immaturity and irresponsibility of juveniles, almost every State prohibits those under

> 18 years of age from voting, serving on juries, or marrying without parental consent.
>
> The second area of difference is that juveniles are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure. ("[Y]outh is more than a chronological fact. It is a time and condition of life when a person may be most susceptible to influence and to psychological damage"). This is explained in part by the prevailing circumstance that juveniles have less control, or less experience with control, over their own environment. ("[A]s legal minors, [juveniles] lack the freedom that adults have to extricate themselves from a criminogenic setting").
>
> The third broad difference is that the character of a juvenile is not as well formed as that of an adult. The personality traits of juveniles are more transitory, less fixed.
>
> . . . The susceptibility of juveniles to immature and irresponsible behavior means "their irresponsible conduct is not as morally reprehensible as that of an adult." Their own vulnerability and comparative lack of control over their immediate surroundings mean juveniles have a greater claim than adults to be forgiven for failing to escape negative influences in their whole environment. The reality that juveniles still struggle to define their identity means it is less supportable to conclude that even a heinous crime committed by a juvenile is evidence of irretrievably depraved character. From a moral standpoint it would be misguided to equate the failings of a minor with those of an adult, for a greater possibility exists that a minor's character deficiencies will be reformed. Indeed, "[t]he relevance of youth as a mitigating factor derives from the fact that the signature qualities of youth are transient; as individuals mature, the impetuousness and recklessness that may dominate in younger years can subside."

*Id.* at 569-570.

### III. The Sentencing Guidelines

The advisory sentencing guideline range in this case – zero to six months – is appropriate and recommends a sentence of probation. Indeed, after a comprehensive multi-year study, the Sentencing Commission recognized that its initial guidelines did not adequately take into account that

zero-criminal history offenders, such as Hunter Palm are less likely to re-offend. For that reason, this past year the Commission added a 2-level decrease in the offense level for offenders in criminal history I. *See* U.S.S.G. § 4C1.1 and 5C1.1, comment (n.10); PSR at ¶ 42. The Court is not free to disregard these guidelines amendments in calculating the range. To do so would be to commit procedural error.

Moreover, the government's arguments for rejecting those recent changes are mistaken. As the Probation Officer found, the amendment applies to Mr. Hunter. By his conduct before and since January 6, Hunter Palm has shown that his conduct on January 6 was an aberration and that he will not reoffend. There are only two cases of which counsel is aware where the recent guidelines amendments were not applied. Both cases involved defendants who had engaged in actual violence, assaulting law enforcement officers so that by its terms § 4C1.1 woud not apply. That is not the situation in the instant case.

**IV.     Imposing a Term of Imprisonment is Inconsistent with the Purposes of Sentencing and Would Result in Unwarranted Disparity**

    **A.     Purposes of Sentencing**

A sentence of probation is the appropriate sentence in this case. The starting point for eliminating sentencing disparity is the guideline range. *Gall v. United States*, 552 U.S. 38, 49-50 (2007) ("As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark."). Moreover, probation is appropriate here because it reflects the seriousness of the offense committed by Hunter Palm in that he did not destroy property, did not commit violence and encouraged others not to destroy the Capitol, and for the other reasons set out above. Indeed, while "custodial sentences are qualitatively more severe than

probationary sentences of equivalent terms" probation nonetheless "substantially restricts [a person's] liberty." *Gall*, 552 U.S. at 48; *United States v. Knights,* 534 U.S. 112, 119 (2001) ("Inherent in the very nature of probation is that probationers 'do not enjoy the absolute liberty to which every citizen is entitled"). In determining the sentence to impose on Hunter Palm, this Court must not place too much emphasis on the conduct of others who were violent or had more malevolent purposes on January 6.

Imprisonment here is unnecessary because Hunter's conduct throughout his young life and his post-offense conduct shows that he will not return to criminal behavior and is not a danger to society. *See Pepper v. United States*, 562 U.S. 476, 491 (2011) (district court may consider evidence of the defendant's post-offense rehabilitation and may rely on such evidence to support a downward variance).

> In assessing ... deterrence, protection of the public, and rehabilitation, 18 U.S.C. § 3553(a)(2)(B)(C) & (D), there would seem to be no better evidence than a defendant's post-incarceration conduct". Post[offense] rehabilitation may also critically inform a sentencing judge's overarching duty under § 3553(a) to "impose a sentence sufficient, but not greater than necessary" to comply with the sentencing purposes set forth in § 3553(a)(2).
> . . .
> Pepper's post[offense] conduct also sheds light on the likelihood that he will engage in future criminal conduct, a central factor that district courts must assess when imposing sentence. *See* §§ 3553(a)(2)(B)-(C); *Gall v. United States*, 552 U.S. 38, 59 (2007) ("Gall's self-motivated rehabilitation ... lends strong support to the conclusion that imprisonment was not necessary to deter Gall from engaging in future criminal conduct or to protect the public from his future criminal acts" (citing §§ 3553(a)(2)(B)-(C))).

**B.     Unwarranted Disparity**

Imposing a term of imprisonment in this case – in light of the entirety of the mitigating circumstances, the misdemeanor charge and the offense conduct – would result in unwarranted disparity.  A review of this Court's sentence in misdemeanor cases shows that a sentence of imprisonment would result in unwarranted disparity.  The only cases where this Court imposed imprisonment in misdemeanor cases involved violence or destruction of property by the defendant and prior criminal conduct, factors that are not present in Hunter Palm's case. *See, e.g., United States v. Harris,* 21-CR-00274 (RDM); *United States v. Cramer*, 22-cr-339-RDM.  Indeed, in the sentencing memorandum the government filed in *Harris,* it explained that the only cases where this Court imposed imprisonment in stand-alone 1752 cases were distinguishable for the seriousness of the conduct.

> This Court has sentenced one Capitol Riot defendant for a standalone violation of 18 U.S.C. § 1752(a)(2), Disorderly and Disruptive Conduct, in *United States v. Eric Cramer*, 22-cr-339-RDM, imposing a sentence of 8 months of incarceration, 12 months of supervised release, 60 hours community service, and $500 restitution. The facts in Cramer are similar those in the instant case. Both Cramer and Harris dressed elaborately and brought multiple items with them to the riot. Cramer brought a gas mask, a backpack, and a baseball bat. Harris brought multiple flags, a megaphone, and a GoPro camera. On the previous night, Harris openly carried a knife around downtown Washington, D.C. Both Cramer and Harris had physical encounters with police officers on the front lines. Cramer caught a police officer's baton in his hand on the Lower West Terrace. Harris pushed an officer in the Rotunda and actively resisted officers' efforts to remove him.

*Harris*, Gov Sent'g Memo (ECF 55) at 31.  Both Cramer and Harris had serious criminal histories.[1]

---

[1] Cramer's criminal history included a "very serious" 2004 conviction for assault " that appears to have also involved a kidnapping incident." *Cramer*, Gov Sent'g memo (ECF 48) at 17. Harris had a serious criminal history "including convictions for robbery, kidnapping, breaking and entering, theft, assault, escape from prison, resisting a public officer, disorderly conduct, and

By contrast, in cases where there was no assaultive behavior by the defendant or limited criminal history, this Court did not impose imprisonment. In *United States v. Lentz*, 22-CR-00053 (RDM), this Court imposed 30 days' home detention and 36 months' probation in a case that involved a former law enforcement officer, much older than Hunter Palm who broadcast and celebrated the breach and attack on officers.

> Lentz was one of the first rioters to enter the Capitol, crossing the threshold within minutes of the first breach of the building and observing broken windows as he entered. At the time Lentz entered, the Senate was still in session. He also stayed in the building for a significant amount of time, nearly an hour. Lentz's conduct is thus unlike some others who entered and quickly exited.
>
> While Lentz was inside, he was not content to simply roam the halls of the building and take selfies (though he did in fact do that). He broadcast live to his social media account, declaring that "America has spoken. You cannot stop millions of people. Cannot stop it. Can't. It's impossible. America has a voice. We give them the power. We give the power. The people give the power, and we're here to take it back." The defendant also noted how overwhelmed police were, in the context of this statement.

*Lentz,* Gov Sent'g Memo, ECF 30 at 11-12.

In *United States v. Steele-Smith*, 21-CR-00077 (RDM), this Court rejected the government's motion to imprison the defendant instead imposing a sentence of 36 months' probation. The government argued that Steele-Smith should be imprisoned because she

> (1) approached the Capitol building on the West Front, an area where officers violently battled with the mob of rioters attempting to force their entry inside of the Capitol, and ignored physical barriers that had been pushed to the ground; (2) heard rioters chanting "we stormed the castle" and used her cellphone to record and post video of the rioters on her Facebook page; (3) repeatedly ignored police officers who were attempting to remove rioters from the Capitol, even after she

---

misdemeanor drug possession." *Harris*, Gov Sen't Memo (ECF 55) at 26-27.

was struck by a police officer's rubber bullet; (4) entered the office of then U.S. Speaker of the House Nancy Pelosi for nearly five minutes and took pictures; (5) remained inside of the Capitol for approximately 45 minutes before exiting the Capitol; (6) deleted her January 6-related Facebook posts after she left the Capitol; (7) has a criminal history of arrests for assaults and a conviction for battery; and (8) has failed to show either remorse or contrition for her conduct.

In *Lentz, Steele-Smith,* and other cases where this Court has rejected the government's call for a sentence of imprisonment it also has considered the identical arguments that the government has made herein about the events of January 6 and the need for deterrence. Despite those arguments, this Court has determined that a sentence that does not include imprisonment was reasonable, "sufficient, but not greater than necessary" and furthered the purposes of sentencing as required by 18 U.S.C. § 3553(a). The Court should do the same here.

## CONCLUSION

For all the above-noted reasons and any that may appear fair and just, this Honorable Court should impose a term of probation in this case to account for all the mitigating circumstances and consistent with the guideline range of zero to six months, which falls in Zone A. Such a sentence is "sufficient, but not greater than necessary" for this young man, who has otherwise led an exemplary life. It provides just punishment, avoids unwarranted sentencing disparity, and furthers all the purposes of sentencing.

Respectfully submitted,

/s/ *Carmen D. Hernandez*
**Carmen D. Hernandez**
Bar No. MD 03366
7166 Mink Hollow Rd
Highland, MD 20777
240-472-3391
chernan7@aol.com

10

## CERTIFICATE OF SERVICE

  I hereby certify that the instant notice was served on all counsel of record 3rd day of January, 2024 on all counsel of record via ECF.

                      /s/ *Carmen D. Hernandez*
                      **Carmen D. Hernandez**